DONALD H. CRAM (State Bar No. 160004)
dhc@severson.com
BERNARD J. KORNBERG (State Bar No. 252006)
bjk@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Prestige Century Investments
Limited and CIP United Co. Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| PRESTIGE CENTURY INVESTMENTS LIMITED, a Samoa Company; and CIP UNITED CO., LTD., a People's Republic of China Company,<br><br>Plaintiffs,<br><br>vs.<br><br>MIPS TECH, LLC, a Delaware Limited Liability Company, MIPS TECHNOLOGIES INTERNATIONAL LTD., a Cayman Island Corporation; and WAVE COMPUTING, INC., a Delaware Corporation,<br><br>Defendants. | Case No. 20-cv-02318<br><br>**COMPLAINT FOR**<br><br>**(1) BREACH OF CONTRACT;**<br>**(2) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>**(3) DECLARATORY RELIEF; and**<br>**(4) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS.** |

Plaintiffs Prestige Century Investments Limited ("Prestige") and CIP United Co. Ltd. ("CIP United") (collectively, Prestige and CIP United are collectively referred to as "Plaintiffs") allege as follows:

**JURISDICTION**

1. The jurisdiction of the Court over the subject matter of this action is predicated on diversity jurisdiction as defined by 28 U.S.C. §1332. The amount in controversy, exclusive of interest and costs, exceeds $75,000 and the claims are between citizens of a State and citizens of a foreign state.

2. Plaintiff Prestige is a Samoa limited company with its principal office located in Shanghai, Peoples Republic of China.

3. Plaintiff CIP United People's Republic of China limited company with its principal office located in Shanghai, Peoples Republic of China.

4. Defendant MIPS Tech, LLC ("MIPS LLC") is a Delaware limited liability company with its principal place of business located in Santa Clara, California.

5. Defendant MIPS Technologies Ltd. ("MIPS LTD"), is a Cayman Island limited company with its principal place of business located in Santa Clara, California.  (Collectively, MIPS LLC and MIPS LTD are referred to as "MIPS".)

6. Defendant Wave Computing, Inc. is a Delaware corporation with its principal place of business located in Santa Clara, California.

**VENUE**

7. Venue is proper under 28 U.S.C. §1391 as all defendants reside in this judicial district.

**GENERAL ALLEGATIONS**

**The License**

8. MIPS is in the business of developing and licensing intellectual property based on a Reduced Instruction Set Computer technology known as the "MIPS Architecture," including certain processor core designs known as the "MIPS Cores" (collectively, the "MIPS Technology").

9. Wave is the parent company and sole member of MIPS LLC.  MIPS LLC is, in turn, the sole shareholder of MIPS LTD.

10. On or about December 29, 2018, MIPS LTD and Prestige entered into a set of interrelated agreements entitled (i) the Master Technology License Agreement for MIPS Architecture and MIPS Cores dated December 29, 2018, (ii) the MIPS Architecture and Core Schedule for Licensed MIPS Technology dated December 29, 2018, and (iii) and the MIPS Technology Schedule For License Of MIPS Architecture Compatible MIPS Cores And

Sublicensing Licensed MIPS Cores Dated December 29, 2018 (collectively, the "License").[1]

11. The License, in broad strokes, grants Prestige the exclusive right to sub-license the MIPS Technology in the Mainland People's Republic of China, Hong Kong and Macao (the "Territory") as an autonomous operation (owned performance and self-funding). The total value of the license is sixty million dollars paid over fifteen years.

12. The License further obligates MIPS LTD to provide certain deliverables that are necessary for Prestige to make use of the License (the "MIPS Deliverables"). The MIPS Deliverables include regular maintenance and updating of MIPS Cores by MIPS, direct delivery by MIPS of updated MIPS Cores to authorized sub-licensees of Prestige, and technical support to Prestige and its sub-licensees.

13. The MIPS Deliverables are a material and necessary term of the License. Without the MIPS Deliverables, the right to use and sub-license MIPS Technology depends on the MIPS Deliverables to implement.

14. In consideration for these commitments, Prestige is obligated to make certain License payments pursuant to a payment schedule. This schedule includes an immediate payment of eight million dollars upon the effective date of the License, then subsequent payments starting with the fourth anniversary of the License.

15. On or about February 15, 2019, MIPS LTD and Prestige entered into Amendment 1 to the License ("Amendment 1"). Under Amendment 1, Prestige was to make the first installment payment of the License by March 29, 2019. The initial fee covered the payment obligations under the License until March 31, 2022.

16. On or about May 29, 2019, MIPS LTD and Prestige entered into Amendment 2 to the License ("Amendment 2"). Under Amendment 2, MIPS would assign all existing licensees and contracts in the Territory to the Plaintiffs as an autonomous operation. Prestige assigned all

---

[1] The License includes terms requiring the parties to maintain he confidentiality of the License, with an exception for any disclosure "in connection with the enforcement of this Agreement or rights under this Agreement." Without waiving any argument regarding the scope of this exception, Plaintiffs will limit disclosure of terms of the License in this complaint to what is necessary to plead the causes of action contained therein.

rights and obligations under the License to CIP United, a wholly owned subsidiary of Prestige, such that Prestige and CIP United are joint licensees under the License.

17. Under Amendment 2, MIPS LTD assigned its rights and obligations under the License to MIPS LLC.

18. Under Amendment 2, the payment schedule was again amended, with the next payment from Plaintiffs coming due in 2022.

**WAVE Direct MIPS to Breach the License**

19. The signatory of the License for MIPS, along with Amendment 1 and Amendment 2 to the License, was Arthur Swift. Mr. Swift was, at various times, President of MIPS and then CEO of Wave.

20. Before July of 2019, the deliveries of MIPS software were made via Wave and MIPS approved systems. Documentation, support, and training were made on schedule. The completion rate of the MIPS Deliverables was more than 50%.

21. At all times, Plaintiffs have incorporated best practices into their internal IT Security in order to protect MIPS' intellectual property. Intellectual property security is key to the Plaintiffs. As an autonomous operation, data leakage is detrimental to Plaintiffs' assets and business.

22. On August 15, 2019, at the MIPS Open Forum held in Shanghai and hosted by CIP United, Mr. Swift personally reconfirmed to Plaintiffs that Plaintiffs were in compliance with the requirements under the License, including all export processes.

23. Wave and MIPS would provide the remaining MIPS Deliverables called for by the License.

24. During the third week of August 2019, Mr. Swift left as CEO of Wave.

25. Sanjai Kohli was installed as the interim CEO of Wave in late August or early September of 2019. Wave did not make any public announcement of his appointment.

26. Upon Mr. Kohli's appointment, MIPS, without warning, failed to timely provide remaining MIPS Deliverables. This indefinite delay of delivery included affirmative acts such as interfering with MIPS obligation to transfer business agreements and provide non-confidential

1 technical support to Plaintiffs, Plaintiffs' sub-licensees, and customers.

2   27.   No reasonable explanation was provided for the sudden cessation of the delivery of
3 the MIPS Deliverables in breach of the License.

4   28.   On September 13, 2019, Mr. Kohli, as CEO of Wave, sent a letter to Plaintiffs
5 regarding MIPS' failure to provide the MIPS Deliverables.

6   29.   In this September 13 letter, Mr. Kohli requested that Plaintiffs provide "source and
7 sufficiency of capital at this time," despite Plaintiffs just having made the entire initial License
8 payment, which was accepted by MIPS without reservation, and with no further payment due until
9 2022.

10   30.   Mr. Kohli further stated that he wanted further information about "your activity to
11 ensure compliance with the Agreement and applicable law but also your obligations to find and
12 close new business."

13   31.   The License allows MIPS to demand that Plaintiffs disclose their initial sources of
14 funding, and any subsequent funding rounds, on a no more than yearly basis. Mr. Kohli's request
15 went far beyond that. No term of the License requires that Plaintiffs disclose their confidential
16 internal finances and business performance. Nor is Plaintiffs' internal finances and business
17 performance relevant to Wave and MIPS' interests, as the License does not provide royalty
18 obligation to MIPS. Plaintiffs were granted the right, under Amendment 2, to operate as an
19 autonomous operation.

20   32.   Mr. Kohli further wrote he intended to proceed with a new intellectual property
21 security audit (the "IP Audit") as soon as possible.

22   33.   As to the demand that Plaintiffs undergo a new IP Audit, the License provides that
23 MIPS may demand such an IP Audit and that "Delivery of MIPS Deliverables are preconditioned
24 upon MIPS' determination that Licensee has satisfied [the audit]." However, the License further
25 provides that "*such determination by MIPS not to be unreasonably refused, conditioned or*
26 *delayed*."

27   34.   The September 13, 2019 letter was made solely for the purpose of creating a false
28 justification for MIPS' breach of the License.

35. Plaintiffs had, upon the effective date of the License (December 29, 2018), provided a fully completed "IT Security Questionnaire" to Wave and MIPS.  Mr. Swift confirmed that the IP Audit requirement was satisfied and stated that MIPS would start deliveries of the MIPS Deliverables.  Plaintiffs further authorized MIPS to complete the "network intrusion" as the final portion on of the IP Audit on August 6, 2019.  There was no reasonable basis to demand another IP Audit under the same IT system that Wave and MIPS had already approved.

36. On September 19, 2019, Plaintiffs would respond to Mr. Kohli's September 13, 2019 letter.  Plaintiffs would detail their compliance with the License and marketing promotions paid for solely by Plaintiffs.

37. Neither MIPS nor Wave would respond to the September 19 letter.  Nor did Mr. Kohli answer any of the subsequent letters or other communications from the Plaintiffs.

38. All new business of Plaintiffs, including singing new sublicensees, was delayed due to the breach of the License by MIPS at the directing of Mr. Kohli.

39. On November 1, 2019, Wave and MIPs would unilaterally demand an entirely new IP Audit (the "November 1 IP Audit").  This ad hoc IP Audit demanded information far beyond the scope of "IP Security Documents [and] network vulnerability testing" allowed by the License.

40. The License provides MIPS the right to perform an audit only to confirm the security of the IP licensed to Plaintiffs by MIPS.  It does not allow MIPS to review and expose Plaintiffs' corporate IT infrastructure unrelated to the security of MIPS intellectual property.

41. Further, the November 1 IP Audit would have required Plaintiffs to disclose the personal confidential information of employees in the Territory.  Doing so would be illegal under local law and regulation.

42. To the best of Plaintiffs' knowledge, Plaintiffs are the only MIPS' licensee whose IP audit included the extensive demands of the November 1 IP Audit.

43. To the best of Plaintiffs' knowledge, MIPS itself would not be able to pass the requirements of the November 1 IP Audit.

44. The demands of the November 1 IP Audit were thus far beyond the needs of MIPS to secure its IP.

45. To the very limited extent that MIPS would communicate with Plaintiffs regarding the scope of the IP Audit, MIPS would always come back with a new questionnaire. All communications from Plaintiffs regarding the unreasonable scope of the November 1 IP Audit or the fact that it would require Plaintiffs to violate local law were ignored.

46. The November 1 IP Audit demand was not made for the purpose of satisfying any reasonable or legitimate security concern, but as a pretextual excuse to withhold the MIPS Deliverables owed under the License. Therefore, any withholding of the MIPS Deliverables was a clear and unequivocal breach of the License.

47. Wave and MIPS would take further detrimental and bad faith act to harm Plaintiffs' rights under the License.

48. Plaintiffs have sponsored the promotion of MIPS Technology in a MIPS Open initiative inaugurated on Dec. 17, 2018. As part of this initiative, Wave and MIPS would propose to Plaintiffs that two MIPS Cores would be given royalty free, to encourage the use of MIPS Technology in general. Plaintiffs agreed, and as part of this agreement, to remove these two MIPS Cores from the License.

49. On December 27, 2019, Wave, unilaterally and without consulting with Plaintiffs, cancelled the MIPS Open initiative that had been promised to the worldwide users of MIPS Technology.

50. As the two MIPS cores were no longer part of the MIPS Open promotional event, Plaintiffs requested Wave and MIPS amend and return the two MIPS Cores to the License so that Plaintiffs can maintain their service knowing the open source initiative would be supported by the United States Government. Wave and MIPS never responded to Plaintiffs' request.

51. On January 2, 2020, Plaintiffs would present a letter to Wave and MIPS, again setting forth Wave and MIPS' breach of the License. Mr. Kohli refused to discuss this letter or the November 1 IP Audit with Plaintiffs.

52. On March 16, 2020, Plaintiffs would send a final warning letter to Wave and MIPS, again setting forth Wave and MIPS' breach of the License. In this letter, the Plaintiffs set forth Mr. Kohli's unreasonable demands and his refusal to engage in any good faith discussions with

1  Plaintiffs.

2  53.   In response to the March 16, 2106 letter, Wave and MIPS would, through a director
3  of the board of Wave, state *for the first time* that MIPS could not provide the MIPS Deliverables
4  as doing so would violate export controls.

5  54.   This new post hoc excuse was clearly a pretextual basis for MIPS to continue its
6  ongoing breach of the License since August 2019.  Providing the MIPS Deliverables would not
7  violate export control law.  The Architecture-Core Technology Schedule, which is incorporated
8  into the License and sets forth the licensed MIPS Cores, provides the proper Export Control
9  Classification Number for export purpose for each licensed MIPS Core.  This list was prepared by
10 MIPS before signing the License.

11 55.   Under the License, MIPS was required to "after good faith senior management
12 discussions not to exceed thirty (30) days, return to Licensee on a pro-rated basis, any license fees
13 already paid for the period after such action."  No senior management discussions were granted
14 from Wave, nor were any License fees returned.

15 56.   On March 26, 2020, Plaintiffs would send a letter to Wave and MIPS, again setting
16 forth Wave and MIPS' breach of the License.

17 57.   Despite these numerous good faith requests by Plaintiffs, Mr. Kohli continues to
18 refuse to meet or discuss or honor the License.

19 58.   The refusal of MIPS and Wave are not the result of a good faith dispute regarding
20 the obligations of Plaintiffs to comply.  MIPS and Wave continued demands for out of scope and
21 improper IT audit requirements, made only after Plaintiffs had fully paid under the License,
22 demonstrate that the intent of Wave and Mr. Kolhi to find pretextual excuses to breach the
23 License.

24 59.   Wave and MIPS are using these pretextual excuses to try to force Plaintiffs to
25 increase the License fee or to surrender it for Wave to sell it to a higher bidder.

26 60.   Plaintiffs have further learned that Wave and MIPS are likely insolvent and are
27 planning to reorganize under Chapter 11 of the Bankruptcy Code.

28 61.   Plaintiffs thus have no choice but to bring this action to enforce their rights under

the License.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

### As to MIPS LLC and MIPS LTD

62. Plaintiffs hereby incorporates by reference all prior allegations of this complaint as though fully set forth herein.

63. Plaintiffs have timely paid and performed all obligations owed under the License. Until Mr. Kohli's appointment as CEO of Wave, all obligations from Wave and MIPS, including the MIPS Deliverables, were made on schedule.

64. Under the terms of the License, the License "shall be governed by Singapore law excluding its choice of law rules."

65. Despite this full and timely performance by Plaintiffs, MIPS has breached its obligations of the License by failing to complete the MIPS Deliverables from August of 2019 forward. The incomplete deliveries caused massive and irreparable damage. Further, the idle resources prepared for the License represent an extra burden and massive loss to Plaintiffs' resources.

66. By doing so, MIPS has materially breached the terms and conditions of the License.

67. The breach of the License by MIPS is intentional.

68. Due to Wave and MIPS' insolvency, a monetary award is not an adequate remedy. Plaintiffs are entitled to exercise and benefit from the License, including the rights on technical and commercial usage of the licensed produces. Plaintiffs are entitled to a judgment of specific performance ordering MIPS to comply with the License, extending the License for the time period in which MIPS was in breach, and support Plaintiffs and Plaintiffs sub-licensees timely in order to minimize the losses by the breach of the License.

69. As a result of this material breach of the License, Plaintiffs have been damaged in the amount of at least $60 million, constituting (i) $20 million of immediate losses in 2019 until Deliveries completion and processing expenses paid for which MIPS failed to deliver; (ii) $10

1  million in business setup and promotion expenses in reliance of the License, including the sub-
2  licensee's liabilities; and (ii) $30 million in lost profits and valuation. Plaintiffs are entitled to
3  these damages in addition to specific performance.

4   70.  Plaintiffs have been further damaged in the form of attorneys' fees and costs
5  incurred in bringing this action.

## SECOND CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

**As to MIPS LLC and MIPS LTD**

9   71.  Plaintiffs hereby incorporates by reference all prior allegations of this complaint as
10  though fully set forth herein.

11  72.  In entering to the License, Plaintiffs reasonably expected that MIPS would not
12  impose unreasonable IP Security Requirements as part of the License as a pretextual excuse to
13  refuse to honor MIPS' contractual obligation to complete the MIPS Deliverables.

14  73.  In entering to the License, Plaintiffs reasonably expected that when two MIPS
15  Cores were excluded from the License as part of the MIPS Open promotion, MIPS would return
16  the two MIPS Cores to the License after MIPS had unilaterally cancelled the MIPS Open.

17  74.  By doings so, MIPS has wrongfully deprived Plaintiffs of the benefit of the License
18  in violation of the covenant of good faith and fair dealing.

19  75.  As a result of the breach of the covenant of good faith and fair dealing, Plaintiffs
20  have been damages in an amount to be proven at trial, but no less than $60 million.

21  76.  Plaintiffs have been further damaged by the breach of the covenant of good faith
22  and fair dealing in the form of attorneys' fees and costs incurred in bringing this action, as allowed
23  by law.

## THIRD CAUSE OF ACTION

### (Declaratory Relief)

**As to MIPS LLC and MIPS LTD**

27  77.  Plaintiffs hereby incorporates by reference all prior allegations of this complaint as
28  though fully set forth herein.

78. MIPS has asserted that Plaintiffs are not in compliance with the IP Audit requirements of the License.

79. Plaintiffs deny the assertions of MIPS.

80. Plaintiffs assert that the acts of MIPS are in breach of the License, which MIPS denies.

81. Therefore, an actual dispute exists between Plaintiffs and MIPS.

82. A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain its rights and duties relative to MIPS.

## FOURTH CAUSE OF ACTION

### (Intentional Interference With Contractual Relations)

### As to Wave

83. Plaintiffs hereby incorporates by reference all prior allegations of this complaint as though fully set forth herein.

84. The License constitutes a contract between MIPS and Plaintiffs. Before Wave recovers its service level, all rights in the License remain active and can be directly covered by the Plaintiffs.

85. MIPS, as a wholly owned subsidiary of Wave, acts at the direction and under the control of Wave.

86. Wave was fully aware of the License, its terms, and the amendments thereto.

87. The breach of the License by MIPS was done at the direct instruction of Wave.

88. Wave instructed MIPS to breach the License in order to deprive Plaintiffs of the benefit of the License. Wave is seeking to use its economic leverage to force Plaintiffs to renegotiate the License or to surrender it.

89. As a result of this disruption of the contractual relationship between Plaintiffs and MIPS, Plaintiffs have been damaged in an amount to be proved at trial, but in any event, no less than $60 million.

90. Plaintiffs have been further damaged in the form of attorneys' fees and costs incurred in bringing this action, as allowed under Singapore law.

91. The acts of Wave were done with willful intent and/or indifference to the rights of Plaintiffs. Plaintiffs are entitled to punitive damages for the intentional interference of the contractual relationship between Plaintiffs and MIPS.

## **PRAYER**

Wherefore, Plaintiffs prays for judgment against Defendants as follows:

92. On the First Cause of Action for Breach of Contract, Plaintiffs are entitled to a judgment of specific performance ordering MIPS to comply with the License, extending the License for the time period in which MIPS was in breach, and support Plaintiffs and Plaintiffs sub-licensees timely in order to minimize the losses by the breach of the License, along with damages against MIPS in the amount of no less than $60,000,000;

93. On the Second Cause of Action for Breach of the Covenant of Good Faith and Fair Dealing, for damages against MIPS in an amount to be proven at trial, but in any event, no less than $60,000,000;

94. On the Third Cause of Action for Declaratory Relief, for a declaratory judgment that MIPS is in breach of the License due to its failure to honor the contractual obligation to provide the MIPS Deliverables;

95. On the Fourth Cause of Action for Intentional Interference with Contract, for damages against Wave in the amount of no less than $60,000,000 and for punitive and other exemplary damages in the amount of no less than $60,000,000;

96. For prejudgment interest;

97. For attorneys' fees and costs of suit incurred herein; and

98. For such other relief that the Court deems proper.

## **JURY DEMAND**

1. Plaintiffs demand a trial by Jury.

| | | |
|---|---|---|
| 1 | DATED: April 6, 2020 | SEVERSON & WERSON<br>A Professional Corporation |
| 2 | | |

By: /s/Bernard J. Kornberg
 BERNARD J. KORNBERG

Attorneys for Prestige Century Investments Limited and CIP United Co. Ltd.